UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                                :

SHERRY E. BENDER,                      :

                      Plaintiff,      :

                                      :           05 Civ. 6459 (GEL)

             -against-            :

                                      :        **OPINION AND ORDER**

GENERAL SERVICES ADMINISTRATION,   :
et al.,                             :

                      Defendants.     :

                                      :
----------------------------------------------------------------x

Sherry E. Bender, pro se.

Glenn H. Egor, Rivkin Radler, LLP, for defendants.


GERARD E. LYNCH, District Judge:

      Plaintiff Sherry Bender, acting pro se, brought this suit against a number of defendants,

alleging various causes of action arising out of her arrest following an altercation at a Social

Security Administration service center in New York City. This Court previously dismissed

claims against several of those defendants. See Bender v. General Services Admin. ("Bender

I"), No. 05 Civ. 6459, 2006 WL 988241 (S.D.N.Y. April 14, 2006). Two additional defendants,

HWA Security Patrol, Inc., and Ariel Del Valle, now move to dismiss the action as to them. For

the reasons set forth below, that motion will be granted in part and denied in part.

## BACKGROUND

      The following facts are drawn from the allegations of the Amended Complaint, filed

November 6, 2006, which must be taken as true for purposes of defendants' motion to dismiss

for failure to state a claim, see Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir.

1995).

On July 17, 2002, plaintiff Sherry Bender visited a Social Security Administration ("SSA") service center to file some paperwork related to a claim for disability benefits. (Am. Compl. ¶ 17.) While Bender was meeting with SSA Service Representative Jose Aybar, a misunderstanding arose, leading to a heated exchange between the two. (Id. ¶ 17-20.) Aybar telephoned defendant Ariel Del Valle, a security guard and employee of defendant HWA Security Patrol, Inc. ("HWA"), a private firm under contract with the Federal Government, and told Del Valle that "Bender was giving him a hard time." (Id. ¶ 20.) After Del Valle arrived, he twice physically prevented Bender from approaching Aybar's manager, Robert Baldassano, with whom she wanted to speak, by "firmly press[ing]" both of his hands on Ms. Bender's chest," by "push[ing]" her, and by "placing his hand on her chest." (Id. ¶ 20-21.) Following this confrontation, Del Valle called the police to complain that he needed assistance dealing with a "violent woman." (Id. ¶ 21.) A short time later, when Bender attempted to leave the building, Del Valle "forcefully grabbed" and "relentlessly mauled" her, pulled her toward the exit, and then "crush[ed]" Bender's thigh between two glass doors on her way out. (Id. ¶ 23.)

After briefly re-entering and then exiting the building, Bender was arrested by Federal Police Officers ("FPOs"). (Id. ¶ 24.) During the arrest, Bender suffered various injuries to herself and damage to her personal property. (Id.) She was held briefly by the FPOs, and then taken by ambulance to the psychiatric ward of a nearby hospital, where she was admitted, and held overnight. (Id. ¶ 25-32.) She was released the following day. (Id. ¶ 32.) No criminal charges were filed against her. (Id. ¶ 25.)

Just shy of three years later, on July 15, 2005, Bender filed a complaint alleging various torts and violations of her constitutional rights, and naming as defendants a number of government agencies, federal and city officials, and private parties. That complaint was amended on November 6, 2006, and defendants HWA and Del Valle moved to dismiss on July 19, 2007.

## DISCUSSION

### I. ADEQUACY OF SERVICE

Defendants first seek dismissal for insufficient service of process.[1] Plaintiff attempted to serve defendants by certified mail on November 7, 2005. (Decl. of Glenn H. Egor Ex. B.) Federal and New York rules provide a variety of mechanisms for service of a summons and complaint, but service by certified mail is not one of them. See Fed. R. Civ. P. 4(e), (h); N.Y. C.P.L.R. 308, 311. Hence, plaintiff has not complied with the technical requirements of service.

Be that as it may, plaintiff's failure is not grounds for dismissal. Rule 4(m) provides that upon a showing of "good cause" for a failure to effect proper service, a court "must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). Moreover, "district courts have discretion to grant extensions even in the absence of good cause." Zapata v. City of New York, 502 F.3d 192, 196 (2d Cir. 2007). Such discretion should be exercised after a "weighing of overlapping equitable considerations." Id. at 197.

In this case, the equitable considerations clearly favor granting plaintiff additional time to effect proper service. First, plaintiff is proceeding here pro se, and deserves special leniency in

---

[1] Although defendants cite only Rule 12(b)(6), Fed. R. Civ. P., failure of proper service is technically a separate ground for dismissal under Rule 12(b)(5), not an aspect of failure to state a claim.

having her claims decided on the merits.  Spencer v. Doe, 139 F.3d 107, 111-12 (2d Cir. 1998).

Second, and more importantly, defendants have not demonstrated any prejudice from plaintiff's

failure to effect proper service.  They had actual notice of the lawsuit in a timely manner, and

have been active participants in the suit from the very beginning.  In such a situation, the

interests of justice would not be served by dismissal of a claim on purely technical grounds.

Instead, the service with respect to defendants HWA and Del Valle will be quashed, and plaintiff

is directed to effect proper service within 30 days.[2]  See Bender I, 2006 WL 988241, at *4

(rejecting argument made by other defendants in this action for dismissal on grounds of improper

service, and giving plaintiff 30 days to cure defective service).[3]

## II.    FAILURE TO STATE A CLAIM

Defendants next move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all

claims for failure to state a claim upon which relief may be granted.  When deciding a 12(b)(6)

---

[2] As all claims against HWA are dismissed pursuant to this Opinion, see below, plaintiff need only re-serve Del Valle.

[3] Plaintiff persuasively argues that defendants have waived their objection to service through their active participation in the litigation, citing cases from other circuits.  See United States v. Ziegler Bolt and Parts Co., 111 F.3d 878, 882 (Fed. Cir. 1997) ("A defendant may waive such affirmative defenses by actively litigating the suit, even where the defenses are properly included in the defendant's answer."), citing Yeldell v. Tutt, 913 F.2d 533, 539 (8th Cir. 1990); Continental Bank N.A. v. Meyer, 10 F.3d 1293, 1296-97 (7th Cir. 1993); United States v. B.B.S. Elecs. Int'l, Inc., 622 F. Supp. 1089, 1092-94 (Ct. Int'l Trade 1985).  However, in the apparent absence of authority in this Circuit, the more conservative course is to direct that plaintiff simply re-serve defendants.

Plaintiff's other arguments that defendants have waived this defense are without merit. Defendants complied with the terms of Rule 12(h), by raising the defense in their first responsive pleading.  (See Decl. of Glenn H. Egor Ex. E at 8.)  That responsive pleading was not untimely. It was filed on January 30, 2006, in compliance with this Court's Order of January 19, 2006, which extended defendants' time to answer.  Moreover, as defendants were not properly served to begin with, the 20-day clock on their time to answer never actually began to run.  See Fed. R. Civ. P. 12(a)(1).

motion, the Court must take as true the facts as alleged in plaintiff's complaint.  Bolt Elec., 53

F.3d at 469.  All reasonable inferences must be drawn in the plaintiff's favor.  Freedom

Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004).  However, "[g]eneral, conclusory

allegations need not be credited . . . when they are belied by more specific allegations of the

complaint."  Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092 (2d Cir. 1995).  A complaint

may be dismissed where the complaint fails to plead "enough facts to state a claim to relief that

is plausible on its face."  Bell Atlantic Corp. v. Twombly,  ___ U.S. ___, 127 S. Ct. 1955, 1974

(2007).  This requires that a plaintiff satisfy "a flexible 'plausibility standard,' which obliges a

pleader to amplify a claim with some factual allegations in those contexts where such

amplification is needed to render the claim plausible."  Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d

Cir. 2007).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  Twombly, 127 S. Ct. at 1964-65 (internal quotation omitted).

    A.    Common Law Claims

To the extent that plaintiff sues HWA and Del Valle for intentional torts under the

common law of New York State (such as assault, battery, false imprisonment, slander, and

intentional infliction of emotional distress), such claims are time-barred.  New York provides for

a limitations period of one year for "assault, battery, false imprisonment, malicious prosecution,

libel, [and] slander."  N.Y. C.P.L.R. 215.   The same limitation applies to claims for the

intentional infliction of emotional distress.  Goldner v. Sullivan, Gough, Skipworth, Summers

and Smith, 105 A.D.2d 1149, 1151 (4th Dep't. 1984).  Plaintiff commenced this action nearly

three years after the events in question occurred.  Hence, the limitations period had run with

respect to such claims, and they are barred.

B.      Constitutional Claims

Plaintiff brings claims against defendants HWA and Del Valle for violations of her rights arising under the U.S. Constitution.  In particular, plaintiff alleges that HWA and Del Valle unlawfully used "physical force" against her (Am. Compl. ¶ 48), presumably raising an excessive force claim under the Fourth Amendment.  The ability to bring such a claim was first recognized in Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), in which the Supreme Court held that money damages were available against federal agents for violating a person's Fourth Amendment rights.[4]  A federal court awards such damages pursuant to its "general jurisdiction to decide all cases 'arising under the Constitution, laws, or treaties of the United States.'"  Correctional Services Corp. v. Malesko, 534 U.S. 61, 66 (2001), quoting 28 U.S.C. § 1331.  Cases subsequent to Bivens have recognized a right of action against federal officials for violations of other constitutional rights as well.  See Davis v. Passman, 442 U.S. 228 (1979) (Fifth Amendment); Carlson v. Green, 446 U.S. 14 (1980) (Eighth Amendment).  The elements of a Bivens claim are: (1) "that a defendant acted under color of federal law" (2) "to deprive plaintiff of a constitutional right."  Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir.1995).

---

[4] Plaintiff mistakenly professes to rely on 42 U.S.C. § 1983 as grounds for relief.  Section 1983 provides for a private right of action for violations of constitutional rights "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia."  Id. (emphasis added).  Here, to the extent that defendants were clothed with public authority, it was that of federal and not state law, since HWA is a federal contractor providing security to SSA, a federal agency.  However, particularly in light of Bender's pro se status, we construe her § 1983 claim as a Bivens claim.  See Tavarez v. Reno, 54 F.3d 109, 109-10 (2d Cir.1995) (approving district court's recasting of a § 1983 claim brought by a pro se inmate against federal officers as a Bivens claim).

6

1.     <u>Statute of Limitations</u>

Unlike her state law claims, plaintiff's constitutional tort claims are not time-barred.  The statute of limitations for constitutional torts is borrowed from the statute of limitations on "the most appropriate or most analogous" state law tort in the forum state.  <u>Wilson v. Garcia</u>, 471 U.S. 261, 268 (1985) (construing § 1983 statute of limitations).  While plaintiff's claims might appear analogous to intentional torts, in that her injuries flowed from the intentional acts of defendants, under established precedent the statute of limitations for all <u>Bivens</u> claims is borrowed from that governing personal injury suits, which in New York is three years.  <u>Chin v. Bowen</u>, 833 F.2d 21, 24 (2d Cir. 1987); <u>see also</u> <u>Okure v. Owens</u>, 816 F.2d 45 (2d Cir. 1987) (rejecting application of one-year intentional tort statute of limitations to § 1983 claims).

2.     <u>Under Color of Federal Law</u>

To determine whether a defendant has acted under color of federal law for purposes of a <u>Bivens</u> action, courts look to the more established body of law that defines the analogous term – under color of state law – with regard to actions under 42 U.S.C. § 1983.  "Courts of Appeals have held that section 1983 concepts of state action apply in determining whether action was taken 'under color of federal law' for <u>Bivens</u> purposes."  <u>Chin</u>, 833 F.2d at 24.  In that context, the Supreme Court has held that a defendant acts "under color of" state law where he exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  <u>West v. Atkins</u>, 487 U.S. 42, 49 (1988), quoting <u>United States v. Classic</u>, 313 U.S. 299, 326 (1941).  Private individuals can posses such power when they act in concert with the government.  "To act 'under color' of law does not require that the accused be an officer of the State.  It is enough that he is a willful participant in joint activity

with the State or its agents." United States v. Price, 383 U.S. 787, 794 (1966). Accordingly, defendants, although they are not federal officials or entities, have acted under color of federal law if they have exercised power they have by virtue of federal law, or have jointly acted with the federal government or its agents. See also Strother v. Harte, 171 F. Supp. 2d 203, 206 (S.D.N.Y. 2001) ("To demonstrate that a private party was acting under color of federal law, a plaintiff must establish that defendant's actions were commanded or encouraged by the federal government, or that the defendants were so intertwined with the government as to become painted with color of [federal] action.") (internal quotation omitted).

Here, plaintiff sufficiently alleges that defendants were acting under color of federal law. Defendants were contractual participants in the provision of security services for SSA. They are clothed with apparent governmental authority because of their role as providers of security to SSA, a role they perform for the benefit of the federal government, and for which they are compensated from the federal budget. In dealing with the plaintiff in particular, Del Valle cooperated fully with the federal authorities with whom he worked, responding to the call from Aybar, and in turn, soliciting the cooperation of FPOs in effecting plaintiff's arrest. Discovery may produce a richer record with respect to the precise circumstances of defendants' relationship to the federal government, and the role they play in providing security for SSA, or with respect to the degree to which Del Valle's actions were intertwined with those of Aybar or the FPOs, which might cast the matter in a different light. But at this stage of the litigation, it cannot be said as a matter of law that the plaintiff has failed adequately to plead that the defendants' actions were taken "under color of" federal law.

However, defendants correctly point out that Bivens actions may not be brought against private corporations, even when they act under the color of federal law. (D. Mem. 12.) Such actions are foreclosed by Malesko, in which the Supreme Court held that a private corporation operating a halfway house under contract with the Bureau of Prisons was not subject to a Bivens suit for damages resulting from the constitutional deprivation suffered by one of its detainees. 534 U.S. at 63. The Court found the "core premise" of Bivens to be "the deterrence of *individual* officers who commit unconstitutional acts." Id. at 71 (emphasis added), and that such deterrence would be undermined by an application of Bivens to corporate defendants. "[I]f a corporate defendant is available for suit, claimants will focus their collection efforts on it, and not the individual directly responsible for the alleged injury." Id. at 70. As a private corporation operating under contract with the federal government, HWA is in all material respects in the same position as the defendant in Malesko, and it is therefore not subject to a Bivens action.

But the question of whether a Bivens action may lie against defendant Del Valle individually is distinct and, in the Second Circuit, unanswered, at least since Malesko. While Malesko forecloses a Bivens action against a corporation, it "leav[es] open the question of whether a Bivens action could lie against individual officers" of such a corporation. Sanusi v. I.N.S., 100 Fed. Appx. 49, 52 n.3 (2d Cir. 2004). And courts outside the Second Circuit that have addressed the question have split in their answers.

On one side are the Tenth and Fourth Circuits. In Peoples v. CCA Detention Centers, 422 F.3d 1090 (10th Cir. 2005), aff'd by equally divided en banc panel, 449 F.3d 1097 (2006), the Tenth Circuit held that a plaintiff could not avail himself of a Bivens action against individual employees of a private corporation that operated a prison under contract with the

9

United States Marshal Service.  Id. at 1108.  The Peoples court relied heavily on statements in Malesko recounting the Supreme Court's history of refusing to extend Bivens where plaintiff has other remedies available.  "We base our holding upon the Court's statements in Malesko that the purpose of Bivens is only 'to provide an otherwise nonexistent cause of action against individual officers alleged to have acted unconstitutionally . . . or to provide a cause of action for a plaintiff who lacked any alternative remedy.'"  Id. at 1101, quoting Malesko, 534 U.S. at 70 (emphasis removed).  Thus, because plaintiff had available to him alternative legal remedies under state tort law against the employee of a private corporation, "Bivens and its limited progeny do not apply."  Id.  The same conclusion was reached by the Fourth Circuit on similar reasoning.  Holly v. Scott, 434 F.3d 287, 296 (4th Cir. 2006).

On the other side of the split are two district courts in the First and Third Circuits.  In Sarro v. Cornell Corrections, Inc., 248 F. Supp. 2d 52 (D. R.I. 2003), the court found "private prison guards to be federal actors within the meaning of Bivens."  Id. at 61.  It reasoned that such guards act "under color of federal law" because of the role they play in exercising "powers traditionally exclusively reserved to the government."  Id. at 60.  It noted that "[f]inding private prison guards to be federal actors within the meaning of Bivens also is consistent with the weight of authority holding them to be state actors within the meaning of § 1983."  Id. at 61 (citing cases).  It concluded that there was "no manifestation of any Congressional intent to preclude" a remedy under Bivens, where "Congress has not provided any comprehensive scheme for redress" of constitutional abuses by private prison guards.  Id., citing Bush v. Lucas, 462 U.S. 367, 386 (1983).  And it did not find any other "special factors counseling hesitation," where a Bivens remedy would not "interfere with federal fiscal policy, civil service regulations, the

special nature of the military or other governmental programs or policies." Id. at 62, citing Bush, 462 U.S. at 379-80.

Moreover, the Sarro court considered at length the Supreme Court's decision in Malesko, and concluded that it did not counsel against such a conclusion. While acknowledging that, in Malesko, the Court "declined to consider 'extending' Bivens beyond its 'core premise,'" Sarro, 248 F. Supp. 2d at 62, quoting Malesko, 534 U.S. at 71-72, it observed that the "core premise" of Bivens, as defined in Malesko, is "to deter individual federal officers from committing constitutional violations." Id., quoting Malesko, 534 U.S. at 70. The Supreme Court believed that such deterrence would be "undermined by allowing victims to seek recompense from the corporate employer, instead." Id., citing Malesko, 534 U.S. at 70-71. By permitting a Bivens suit against individuals allegedly violating a prisoner's constitutional rights, the court's decision "actually serves that 'core premise' and does not extend it." Id. at 63.

The Sarro court considered another concern expressed in Malesko: the possibility that allowing Bivens suits against corporations would create an asymmetry between remedies available to prisoners in privately operated prisons versus those in federally operated prisons, insofar as those in federally operated prisons may sue only the individual officers and not the Bureau of Prisons itself (which is protected by sovereign immunity). Id., citing Malesko, 534 U.S. at 71-72. This factor suggests that Bivens actions against individuals should be available to a prisoner in a privately managed facility, since to hold otherwise would "deprive that prisoner of a remedy available to prisoners at government-operated facilities," id., thus creating the very sort of asymmetry Malesko sought to avoid. Far from undermining the use of Bivens against individual employees of a private corporation, the reasoning in Malesko actually supports it.

11

The only court in the Third Circuit to consider the issue reached the same result in reliance on the reasoning in <u>Sarro</u>. <u>See Jama v. U.S.I.N.S.</u>, 343 F. Supp. 2d 338, 363 (D. N.J. 2004) (plaintiffs in privately run detention facility may assert a <u>Bivens</u> claim against guards).

The <u>Sarro</u> analysis is the more persuasive, largely for the reasons stated in that opinion. Moreover, the <u>Sarro</u> court more accurately characterizes the breadth of the holding in <u>Malesko</u>. The Tenth Circuit in <u>Peoples</u> places heavy reliance on its understanding that "<u>Malesko</u> indicates that a <u>Bivens</u> claim should not be implied unless the plaintiff has no other means of redress or unless he is seeking an otherwise nonexistent cause of action against the individual defendant." <u>Peoples</u>, 422 F.3d at 1103. But <u>Peoples</u> misreads <u>Malesko</u> on this point. First, <u>Malesko</u> does not lay down a blanket pronouncement, but instead characterizes the factual circumstances of two cases in which the Supreme Court has upheld application of a <u>Bivens</u> remedy. 534 U.S. at 70. Second, it is not the complete absence of remedy which the Court's <u>Bivens</u> jurisprudence finds important, but rather the absence of remedy "for harms caused by an individual officer's *unconstitutional conduct*." <u>Id</u>. (emphasis added).

This latter point is made clear by <u>Bivens</u> itself. There, plaintiff alleged that federal agents had entered plaintiff's apartment without a valid warrant or probable cause, "manacled [plaintiff] in front of his wife and children, and threatened to arrest the entire family." 403 U.S. at 389. They arrested defendant, and subjected him to a strip search and interrogation. <u>Id</u>. Defendants didn't argue "that [Bivens] should be without remedy" for his grievance, but rather that his redress ought be "only by an action in tort, under state [privacy] law, in the state courts." 403 U.S. at 390. In rejecting this argument, the Court did not conclude that Bivens was completely without other remedies, but instead that a violation of one's Fourth Amendment

rights causes a different harm than the commission of a state law tort, and thus is the basis of a different cause of action. "An agent acting – albeit unconstitutionally – in the name of the United States possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own." Bivens, 403 U.S. at 392. See also id. at 409 (Harlan, J., concurring) ("The injuries inflicted by officials acting under color of law, while no less compensable in damages than those inflicted by private parties, are substantially different in kind, as the Court's opinion today discusses in detail.") Having colorable claims for state law torts does not preclude claims for constitutional torts, any more than having colorable claims for battery would preclude claims for assault.

Peoples also reads too much into the statement in Malesko urging "caution toward extending Bivens remedies into any new context." 422 F.3d at 1103, quoting Malesko, 534 U.S. at 74. To say that one should show "caution" toward "extending" a Bivens remedy to a new context begs the question of what counts as an *extension* of Bivens, as opposed to simply an *application* of its central holding. The "core premise" of Bivens, according to Malesko, is "the deterrence of *individual officers* who commit unconstitutional acts." Malesko, 534 U.S. at 71 (emphasis added). While Malesko had no occasion to address whether an "individual officer" includes an individual contractor as well as an individual federal employee, its reasoning strongly suggests that it does. Malesko finds no Bivens liability for a private corporation not because it is private, but because it is a corporation, and permitting liability against the corporation could shield the individual wrongdoer. "[I]f a corporate defendant is available for suit, claimants will focus their collection efforts on it, and not the individual directly responsible for the alleged injury." Id. at 71. Such an argument assumes that there is to be liability for "the

individual directly responsible for the alleged injury." Thus, the application of <u>Bivens</u> to an individual federal contractor violating a person's constitutional rights under color of federal law is not an "extension" of <u>Bivens</u> to a "new context" but an application of what <u>Malesko</u> understands to be <u>Bivens</u>'s "core premise."

Finally, to bar <u>Bivens</u> actions against individuals working under contract for the Federal government would create unjust asymmetries inconsistent with <u>Malesko</u>. The Supreme Court found it important to "maintain parity between the remedies afforded to prisoners at privately-operated facilities and those at government-operated facilities." <u>Sarro</u>, 248 F. Supp. 2d at 63. But the <u>Peoples</u> rule creates just such an asymmetry. The availability of remedies to a person deprived of his constitutional rights by an official acting under color of federal law would turn on the fortuity of whether that official was an employee of the federal government or of an independent contractor. A deprivation of constitutional rights "under color of federal law" is no more or less harmful in one case than the other, and there is no reason to deny recovery to one harmed by the one and not the other. While the Supreme Court has recently shown caution toward expanding the scope of the <u>Bivens</u> remedy, nothing in the Supreme Court's case law supports the arbitrary narrowing of <u>Bivens</u> based on the technical terms of one's employment.

No such asymmetry is found with regard to analogous § 1983 actions, which provide guidance for the construction of <u>Bivens</u>. "Because the two actions share the same practicalities of litigation, federal courts have typically incorporated § 1983 law into <u>Bivens</u> actions." <u>Tavarez</u>, 54 F.3d at 110 (applying standards under § 1983 for unconstitutional imprisonment in analogous <u>Bivens</u> action). Section 1983 is not limited to actions against state agents who are formally employed by the state. "The fact that the State employed [defendant] pursuant to a

contractual arrangement that did not generate the same benefits or obligations applicable to other 'state employees' does not alter the [§ 1983] analysis." West, 487 U.S. at 55-56 (holding that a private physician under contract with state prison acts "under color of state law"). It is the defendant's "function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State." Id. "Under 42 U.S.C. § 1983, private parties acting under color of state law can be held liable for violations of federal constitutional rights." Nicholas v. Goord, 430 F.3d 652, 656 n.7 (2d Cir. 2005). Absent a clear reason why Bivens should not apply to private individuals acting under color of federal law, there is no reason to depart from the well established analogous rule with respect to § 1983 actions. Like the states, the federal government cannot insulate its functionaries from liability by contracting with a security agency rather than hiring security personnel directly.

For all of these reasons, this Court concludes that a Bivens action may lie against a private individual defendant acting under color of federal law. Plaintiff alleges that Del Valle was acting at the direction and for the benefit of the Social Security Administration officials he was employed to protect. Consequently, for the purposes of this motion, she has sufficiently alleged that he was acting under color of federal law.

3.    Deprivation of a Constitutional Right

In addition to alleging that Del Valle was acting under color of federal law, plaintiff must plead sufficient facts to establish that Del Valle deprived her of her constitutional rights. The Fourth Amendment protects citizens "against unreasonable searches and seizures" by the federal government. U.S. Const. amend. IV. A "seizure" triggering Fourth Amendment protections "occurs only when government actors have, 'by means of physical force or show of authority,

. . . in some way restrained the liberty of a citizen.'" Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) (alteration in original), quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). Whether the force used is "unreasonable" is governed by an "objective reasonableness" standard, determined in light of "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 395-96. Although "[n]ot every push or shove . . . violates a [person's] constitutional rights," Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973), there is no requirement that a plaintiff suffer significant injury in order to be able to sustain a claim. For example, the Second Circuit has permitted a plaintiff's claims to survive "on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising." Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004), quoting Robison v. Via, 821 F.2d 913, 924-25 (2d Cir. 1987).

Plaintiff's allegations about the force used against her are not extensive, nor is it clear that Del Valle's actions toward Bender even constituted a "seizure," but drawing all reasonable inferences in the plaintiff's favor, it is not implausible that plaintiff could prove facts to support her claim. Bender alleges that Del Valle "pushed" her, that he "forcefully grabbed" and "relentlessly mauled" her, and that he "crush[ed]" her thigh between two glass doors while ejecting her from the premises. (Am. Compl. ¶ 20-23.) These latter two acts were allegedly done even as Bender was voluntarily attempting to leave the building. (Id.) To be sure, the facts may show that Del Valle acted with all prudent care in light of a perceived threat from Bender, but at this stage in the litigation, based solely on the pleadings, it is plausible that his actions

constituted a seizure and that the force used was unreasonable under the circumstances.

Defendants nevertheless argue for dismissal on the ground that Del Valle is entitled to qualified immunity.  (See Def. Mem. 12-13.)  Qualified immunity shields government officials from civil liability for constitutional torts "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).[5]  Qualified immunity arises principally in the context of constitutional torts, but its availability does not follow inexorably from the fact that a defendant is subject to such liability: "[Section] 1983 immunity does not automatically follow § 1983 liability."  Richardson v. McKnight, 521 U.S. 399, 412 (1997).  The basis for qualified immunity is the need to preserve the efficient functioning of government, rather than any inherent limit in the scope of constitutional tort actions or concern about the fairness to potential defendants.  "[Q]ualified immunity . . . acts to safeguard government, and thereby protect the public at large, not to benefit its agents."  Wyatt v. Cole  504 U.S. 158, 167-68 (1992).   The concern is that subjecting public officials to individual liability would cause them to be overly cautious in carrying out their duties, and prevent them from exercising "principled and fearless decision-making."  Wood v. Strickland, 420 U.S. 308, 319 (1975).  Protecting them from lawsuits for actions taken according to reasonable interpretations of existing law provides the right balance of incentives, encouraging the "vigorous exercise of official authority," Butz v.

---

[5] Harlow dealt with a § 1983 action, but as noted supra, the contours of claims and defenses under Bivens and § 1983 are parallel and largely consistent.  This is specifically true in the context of the scope of qualified immunity.  It is "untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials."  Butz v. Economou, 438 U.S. 478, 504 (1978).

Economou, 438 U.S. 478, 506 (1978), while not permitting officials to act with total impunity. Qualified immunity also minimizes the "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." Mitchell v. Forsyth, 472 U.S. 511 (1985).

Accordingly, the Supreme Court has twice found that private parties allegedly acting under color of state law were not protected by qualified immunity. In Wyatt, it held that the rationales justifying qualified immunity did not apply to private parties who had invoked unconstitutional replevin, garnishment, and attachment processes, because such "private parties hold no office requiring them to exercise discretion; nor are they principally concerned with enhancing the public good." 504 U.S. at 168. The Supreme Court reached the same conclusion in Richardson, this time with respect to employees of privately operated prisons.[6] "[S]ince Wyatt makes clear that private actors are not *automatically* immune [from liability for constitutional torts]," and since "there are no special reasons significantly favoring an extension of governmental immunity, we must conclude that private prison guards . . . do not enjoy immunity from suit." 521 U.S. at 412 (emphasis in original). In describing the scope of its ruling, the Court noted that it was dealing in this case with a "private firm, systematically organized to assume a major lengthy administrative task . . . with limited direct supervision by the government, undertake[n] . . . for profit and potentially in competition with other firms." Id. at 413. This stands in contrast to the case of a "private individual briefly associated with a government body, serving as an adjunct to government in an essential governmental activity, or

_____

[6] Because the court below had "assumed, but did not decide" that private parties could be liable under § 1983, the question of liability for private prison guards was not decided by the Richardson Court. 521 U.S. at 413.

acting under close official supervision." Id.

Following Richardson, the circuit courts have generally rejected qualified immunity for private parties operating under contract for the government. See, e.g., Cook v. Martin, 148 Fed. Appx. 327, 342 (6th Cir. 2005) (no qualified immunity for private providers of prison medical services); Malinowski v. DeLuca, 177 F.3d 623, 624 (7th Cir. 1999) (no qualified immunity for privately employed building inspectors); Jensen v. Lane County, 222 F.3d 570, 578 (9th Cir. 2000) (no qualified immunity for provider of psychiatric care services); Halvorsen v. Baird, 146 F.3d 680, 685 (9th Cir. 1998) (no qualified immunity for provider of involuntary commitment services for inebriates); Rosewood Services, Inc. v. Sunflower Diversified Services, Inc., 413 F.3d 1163, 1169 (10th Cir. 2005) (no qualified immunity for provider of disability benefit services); Hinson v. Edmond, 192 F.3d 1342, 1345 (11th Cir. 1999) (no qualified immunity for private providers of prison medical services).

Where courts have found qualified immunity, it has been in cases falling within Richardson's narrow caveat regarding private party acts that are isolated, taken at the specific direction of the government, or done without profit or other marketplace incentive. See, e.g., Mejia v. City of New York, 119 F. Supp. 2d 232, 266-68 (E.D.N.Y. 2000) (qualified immunity for "private actors who are enlisted by law enforcement officials to assist in making an arrest" because marketplace pressures absent for those whose assistance is "brief and isolated" and "not compensated"); Calloway v. Boro of Glassboro Dep't. of Police, 89 F. Supp. 2d 543, 557 n.21 (D. N.J. 2000) (qualified immunity for private citizen "asked to participate in a single criminal investigation . . . acting under the supervision of the [government] investigators."); Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 73 (2d Cir. 1998) (qualified immunity for

private administrators of federal Medicare claims in their efforts to detect Medicare fraud because such efforts are required by law and the administrators have "no personal financial interest" in the pursuit of such fraud.).

Nothing about Del Valle's situation suggests he is entitled to the protections of qualified immunity. The services provided by Del Valle to the federal government were done under a contract in which Del Valle and his employer benefitted financially, and the contract was awarded to HWA in a market in which it competed with other security services firms. Such services to the federal government are continuous, not isolated and sporadic, and HWA has every opportunity and incentive to establish administrative systems for the efficient delivery of its service. Consequently, like the operator of private prisons in Richardson, there is every reason to think that "marketplace pressures" will ensure that HWA employees are neither over- nor under-zealous in the performance of their duties in the face of constitutional liability, and there is therefore no justification for extending them the special protections of qualified immunity.

Accordingly, Del Valle is not entitled to qualified immunity at this juncture, and plaintiff's claim for the unconstitutional use of excessive force against her may proceed.[7]

---

[7] Even if Del Valle were eligible for qualified immunity, however, dismissal at this stage would not be appropriate. Qualified immunity protects a defendant from suits for violations only of constitutional rights that are not "clearly established" at the time of the alleged violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). However, "[i]n Fourth Amendment unreasonable force cases, unlike in other cases, the qualified immunity inquiry is the same as the inquiry made on the merits." O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 37 (2d Cir. 2003) (alteration in original; internal quotation omitted). That is, a defendant is entitled to qualified immunity only if his actions were "objective[ly] reasonable[]." Graham, 490 U.S. at 396. Because it cannot be determined as a matter of law from the allegations of the pleadings that Del Valle's use of force was necessarily reasonable, it cannot be determined at the pleading stage that defendant was protected by qualified immunity.

C.     Other Claims

To the extent that plaintiff alleges that defendants violated 18 U.S.C. §§ 6(a), 241, 242, 1001, and 1512(d)(4), any such claims are dismissed because these statutes do not provide a private cause of action. See Bender I at *1 (dismissing claims pursuant to these same statutes with regard to other defendants in this action).

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied with respect to the Fourth Amendment claim against defendant Del Valle, and granted as to all other claims agasint Del Valle and HWA. Plaintiff's service on defendant Del Valle is quashed, and she is directed to re-serve Del Valle no later than April 4, 2008.

SO ORDERED.

Dated: New York, New York
       March 5, 2008

GERARD E. LYNCH
United States District Judge