**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**SHERRY E. BENDER,**

               **Plaintiff,**

               **- against -**

**ARIEL DEL VALLE, et al.,**

               **Defendants.**

**OPINION & ORDER**

**05 Civ. 6459 (GEL) (RLE)**

---

**RONALD L. ELLIS, United States Magistrate Judge:**

### I. INTRODUCTION

On July 15, 2005, *pro se* Plaintiff, Sherry Bender, filed this action alleging numerous civil rights violations during an altercation with authorities at an office of the Social Security Administration ("SSA"), which ended in Bender's arrest. Pending before the Court is Bender's motion to compel Defendants to produce documents and fully respond to interrogatories under Federal Rule of Civil Procedure 37(a). (Pl. Mot. to Compel, ("Pl. Mot.") at 3.) For the forthcoming reasons, Bender's motion is **DENIED, in part**, and **GRANTED, in part**. Moreover, for his untimely disclosure of witnesses and his incorrect statements in relation to this disclosure, Glenn H. Egor, counsel for Ariel Del Valle, **SHALL** pay $1000 in sanctions to the treasury of the Court.

### II. BACKGROUND

In an Order dated June 25, 2007, the Court summarized the discovery history in this case as follows:

> On October 12, 2006, this Court ordered that the deadline for filing all remaining requests for discovery would be October 27, 2006. On December 5, 2006, the Court ordered that there be no new discovery filings because of the numerous discovery

extensions that have been granted in the case. In her December 13, 2006 letter, Bender stated that she had believed she would have until thirty days prior to the end of discovery to file new discovery requests, and asked that the deadline for new discovery filings be extended until December 31, 2006. Taking the plaintiff's *pro se* status into consideration, the Court extended the deadline for filing all discovery requests in this case to January 2, 2007. This order was issued on December 22, 2006. Because of the parties' difficulties in complying with discovery, the Court gave the parties until May 31, 2007 to finish discovery. All discovery was to be completed by this date, unless specifically approved by the Court.

(Order dated June 25, 2007 at 3 (the "June 25 Order").) There were no further extensions to the deadline for filing new discovery requests. The Court ruled that Plaintiff's deadline for filing any motion to compel discovery regarding the discovery requests made before January 2, 2007, was January 22, 2007. (Order dated January 10, 2007).

Bender served a number of interrogatories on the Defendants in 2006, before the January 2, 2007, deadline for filing discovery requests. (Pl. Mot. at 1-2.) As a result of what Bender perceived to be incomplete answers to her earlier interrogatories, she sent multiple letters reiterating her unmet requests to counsel for each Defendant in May 2007 (the "May 2007 Letters"). (*Id.* at 2.) The Parties disputed the timeliness of the discovery requests in the May 2007 Letters. Defendants asserted that the requests were new requests, while Bender claimed they were the same as earlier, timely discovery requests, but more clearly articulated. (June 25 Order at 7.) In reference to Bender's requests in the May 2007 Letters, the Court noted that "[r]egardless of how the requests are characterized, the deadline for filing discovery requests was January 2 [, 2007]." (*Id.*)

On October 5, 2007, this Court issued an Order granting Bender leave to file a motion to compel discovery. Bender then filed the present motion, requesting "an Order compelling all defendants to produce all documents requested, and respond fully to all interrogatories, as

2

specifically articulated in Plaintiff's letters of May 16, 2007, May 17, 2007, and May 24, 2007."
(Pl. Mot. at 3.) Bender asserts that all of the documents and information requested in the May
2007 letters are "directly pertinent . . . for the determination of facts related to this case." (*Id*.)
She claims that "most of . . . defendants responses to interrogatories have been resisted, denied,
incomplete, [or] evasive," and that the Defendants have only "partially" responded to her
requests for information and documents. (*Id*. at 2-3.)

In opposing Bender's motion, Defendants argue that it should be denied for failure to
identify any particular discovery disputes, and because it is untimely and duplicative of prior
motions. (Ariel Del Valle and HWA, Inc. Opposition to Plaintiff's Motion to Compel Discovery
at 1; *Bivens* Defendants' 11/5/07 Letter to Court; The City of New York Law Department's
11/29/07 Letter to Court.) In her Reply, Bender argues that her motion is timely because this
Court granted her leave to file it in an Order dated October 23, 2007. (Plaintiff's Reply in
Support of Motion to Compel Discovery at 1). She also identifies specific discovery disputes in
her Reply. (*Id*. at 1-8.)

One of the specific disputes Bender raises in her Reply pertains to the identities of non-party witnesses to the events at the SSA office that gave rise to Bender's underlying civil rights
claims. Bender notes that the "witnesses in question were the two individuals, seen on the
Federal videotapes to be seated approximately ten feet away from the plaintiff during her entire
visit to the Social Security Administration office on that day." (*Id*. at 2.) Bender served a first set
of interrogatories seeking this information from HWA, Inc. on November 11, 2006. Specifically,
the first interrogatory requests that Defendant

Identify the name and addresses of all persons in the SSA office between 10:50 and

3

> noon on July 17, 2002. Specify all persons inside the administrative area, noting the time of their arrival (using the assistance of the federal video cameras).
>> 1(a). Specifically identify the two persons, shown in the federal videotapes seated approximately ten feet away from the Plaintiff (diagonally behind AYBAR'S desk), during plaintiff's entire time within the administrative area of the SSA [precisely 11:00:00 a.m. through 11:19:50 a.m.] and provide all disclosures required pursuant to Federal Rule 26.

(Plaintiff's First Set of Interrogatories and Request for Production of Documents and Things from Defendant HWA, Inc. at 3.) Bender notes that her interrogatory "specifically pointed to the location of [the] two individuals" in question, and that Defendant Del Valle's[1] response to her interrogatory request was that those persons were hearing impaired. Bender continues,

> Subsequently Del Valle's attorney stated that the names of those individuals had been disclosed, but they were not. Attorneys for Del Valle point to their letter dated April 6, 2007, referencing witnesses identified by Del Valle seated approximately ten feet away from the plaintiff on July 17, 2002 to be three women, yet this is clearly contradicted by the Federal videotapes, which show two thin, young, white males, in accordance with all of plaintiff's testimony.

(Plaintiff's Reply in Support of Plaintiff's Motion to Compel Discovery at 2-3.)

The Court takes particular note of this issue, as the dispute regarding the identification of these witnesses was the subject of two orders of this Court, as well as the subject of a motion by Bender for sanctions against counsel for Defendants Del Valle and HWA, Inc. (Orders, dated March 2, 2007, and April 10, 2007; Letter from Sherry Bender to Court, dated March 30, 2007.) At a conference before the Court in March 2007, Bender stated that when she asked Glenn H. Egor, counsel for Defendants Del Valle and HWA, Inc., to identify the two witnesses visible on

---

[1] On the date of the incident upon which Bender's underlying claim is based, Del Valle was a security guard employed by HWA, Inc., which provides security services under government contract to the SSA. HWA, Inc. was dismissed as a defendant in this case on March 3, 2008, on the grounds that private corporations are not subject to *Bivens* actions. (Opinion and Order of The Honorable Gerard A. Lynch, dated March 5, 2008, at 9.)

the federal videotape of the incident, Egor told her that he had already given her the names of the witnesses in question. (March 1, 2007 Conference Transcript at 40-41.) Bender contended that Egor had not, in fact, disclosed the identities of these witnesses to her. (*Id*.) When the Court asked Egor if he had disclosed these witnesses to Bender, Egor replied, "Judge, it's my understanding that we did make that disclosure for the reasons you set forth, that they would benefit our defense at trial." (*Id*. at 41.) The Court subsequently ordered Egor to provide to the Court by March 9, 2007, documentation of when and how Defendants' potential witnesses had been disclosed to Bender. (Order dated March 2, 2007.) On March 6, Egor copied the Court on a letter he sent to Bender in which he provided notice of "additional witnesses." (Letter from Glenn H. Egor to Sherry Bender dated March 6, 2007.) This letter contained the names and contact information of thirteen physicians and three female SSA employees. (*Id*.) Egor did not provide documentation to the Court of when and how Defendants' potential witnesses had been disclosed to Bender, as required by the March 2, 2007, Order. Bender subsequently copied the Court on two letters to Egor in which she renewed her request for the names and contact information of the two witnesses. (Letters from Sherry Bender to Glenn H. Egor, dated March 8, 2007, and March 30, 2007.)

On March 30, 2007, Bender wrote the Court seeking sanctions against Egor for contempt of the Court's Order, on the grounds that Egor had failed to disclose the names and identification of the two witnesses Bender sought, and for attempting to deceive the Court by responding to the Court's Order with the names of sixteen previously undisclosed potential witnesses. (Letter from Sherry Bender to Court, dated March 30, 2007.) On April 6, 2007, Egor copied the Court on a letter to Bender referring her back to his March 9, 2007, disclosure of sixteen "additional"

5

defense witnesses. (Letter from Glenn H. Egor to Sherry Bender dated April 6, 2007.) He again listed the names of the three "hearing impaired witnesses who are employees of the SSA." (*Id*.) Egor requested that Bender "withdraw her application for sanctions immediately" based on the fact that "we have provided this information to you on two separate occasions." (*Id*.)

At a conference with the Parties on April 10, 2007, the Court addressed the issue of sanctions against Egor for his failure to disclose potential defense witnesses. Egor admitted that he had not disclosed witnesses prior to his March 6, 2007, letter to Bender. Bender countered that the witnesses identified in that letter were not the witnesses whose identification she sought, whose location in the SSA office was plainly described in her first interrogatory to Defendants on November 11, 2006. Bender again asserted that the federal videotape shows two males who are not SSA employees – i.e., not the three hearing impaired, female SSA employees that Egor identified. At that time, the Court noted that it would sanction Egor for his untimely disclosure of the witnesses and his deceptive and intimidating communications to Bender about those witnesses. The Court noted that if the federal videotapes showed the witnesses in question to clearly be male, it might warrant further sanction. The Court also ordered that, by April 17, 2007, Defendants Del Valle and HWA, Inc. were to submit their response to Plaintiff's discovery request of November 11, 2006, as well as documentation of the date they initially responded, to Plaintiff and the Court. (Order, dated April 10, 2007.)

At the videotaped deposition Bender took of Del Valle on May 3, 2007, she confronted him with the federal videotape of the incident at the SSA. Bender notes that Del Valle originally identified the witnesses in question as "Afro-American females, weighing approximately 180 pounds each," but conceded that the witnesses were in fact "two thin, white, male 'youth group

6

volunteers.'" (Plaintiff's Reply in Support of Motion to Compel Discovery at 3.) The Court viewed a copy of the Del Valle deposition and credits Bender's description of Del Valle's testimony. (Del Valle Deposition, May 3, 2008, at 1:41-43.) Bender asserts that Del Valle attempted to deceive her, and that his attorneys deceived the Court. (Plaintiff's Reply in Support of Motion to Compel Discovery at 3.)

In their Opposition to Plaintiff's Motion to Compel Discovery, Defendants Del Valle and HWA, Inc. argue that Plaintiff's motion is untimely and duplicative of previous motions, "including unsubstantiated harassing motions for contempt and sanctions against these defendants." (Ariel Del Valle and HWA, Inc. Opposition to Plaintiff's Motion to Compel Discovery at 1). By their counsel Laurine Rubin[2], they assert that their letter to Bender on April 6, 2007, was responsive to Bender's request for identification of the two SSA witnesses in question, as "[t]here were in fact three hearing impaired witnesses identified in that letter with their complete addresses."

### III. DISCUSSION
**A. Legal Standard**

The scope of discovery is generally limited to any matter, not privileged, which is relevant to the claim or defense of any party or appears reasonably calculated to lead to the discovery of admissible evidence. FED. R. CIV. P. 26(b)(1). However, "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Ferguson v. Lion Holding, Inc.*, 2004 WL 1216300, *2 (S.D.N.Y. Mar.

---

[2] Rubin is an attorney at Rivkin Radler LLP, the same firm as Egor. Rubin appears to have begun handling the defense of Del Valle and HWA, Inc. for Rivkin Radler LLP in September, 2007.

7

25, 2005).

The Court has broad discretion in managing discovery. *Willis v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004). In managing the discovery process, Rule 16(b) of the Federal Rules of Civil Procedure requires district courts "to enter scheduling orders that limit the parties' time to complete discovery." *McKay v. Triborough Bridge & Tunnel Auth.*, 2007 U.S. Dist. LEXIS 81722, *2 (S.D.N.Y. Nov. 2, 2007). The "order 'shall not be modified except upon a showing of good cause' and only by leave of the district judge." *Id*. at *3 (*quoting* FED. R. CIV. PRO. 16(b)(3)).

"The court has inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Revson v. Cinque & Cinque, P.C* ., 221 F.3d 71, 79 (2d Cir. 2000) (*citation and internal quotations omitted* ); *see also Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). The Court may impose sanctions and assess attorney's fees if a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975). Under § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Bad faith is required for the imposition of sanctions. *United States v. Int'l Brotherhood of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991). Notice must be provided before sanctions are imposed. *Schoenberg v. Shapolsky Publishers. Inc.*, 971 F.2d 926, 936 (2d Cir. 1992).

**B. Timeliness of Bender's Requests**

Bender asserts that the Defendants have improperly answered or refused to answer the questions contained in her May 2007 Letters. (Pl. Mot. at 3.) Bender also claims that the Defendants have only partially responded to the requests for documents contained in the May 2007 Letters. The May 2007 Letters posed a total of approximately 75 questions and document requests to the various defendants, covering a variety of topics. (*See* May 2007 Letters, attached to Pl. Mot.) Bender claims that each of the Defendants "have responded only partially to requests for documents and information that are completely proper." (Pl. Mot. at 3.) In response, Defendants argue, among other things, that the requests stated in the May 2007 Letters were untimely. (Ariel Del Valle and HWA, Inc. Opposition to Plaintiff's Motion to Compel Discovery at 1; *Bivens* Defendants' 11/5/07 Letter to Court; The City of New York Law Department's 11/29/07 Letter to Court.)

The Court ruled on the requests contained in the May 2007 Letters in its June 25 Order. When Bender raised these requests with the Court in May 2007, Defendants asserted that the requests were new requests, made after the January 2, 2007 discovery deadline. (June 25 Order at 7). Bender claimed the requests were the same as earlier, timely discovery requests, but more clearly articulated. (*Id.*) The Court noted that "[r]egardless of how the requests are characterized, the deadline for filing discovery requests was January 2 [, 2007]." (*Id.*) The Court reminded Bender that, in any case, the proper remedy for outstanding discovery would be a motion to compel. (June 25 Order at 7.) The Court's reminder to the *pro se* Plaintiff did not alter the Court's deadline of January 22, 2007, for the filing of any motion to compel regarding discovery requests that were due by January 2, 2007.

As of the June 25 Order, the only outstanding discovery issues included: 1) an hour of additional deposition of Bender, as ordered by the Court on June 25, 2007; 2) the *in camera* review of disciplinary records of certain defendants, which was pending submission by the City at that time; and 3) any supplemental requests by Bender for depositions of newly discovered third-party witnesses, which were ordered to be submitted within thirty days of learning of their relevance through deposition testimony. (June 25 Order at 7-8.) Subsequently, Bender's hour of additional deposition was resolved, and, following an *in camera* review of the disciplinary records that were provided by the City, the Court ruled in an Order dated September 6, 2007, that the City was not required to produce the responsive records. However, the issue of Bender's supplemental requests for the depositions of third-party witnesses went unresolved, as Bender could not obtain the names and contact information for the two witnesses Del Valle identified, in his May 2, 2007, deposition, as male youth group volunteers (and which he had originally identified as three female SSA employees).

Bender raises many issues in the May 2007 Letters attached to the motion, and in her Reply. With the exception of one issue Bender identifies in her present motion that is related to depositions of newly discovered third-party witnesses, the Court has addressed all issues that were properly raised at the time the outstanding issues were identified. Notwithstanding the fact that the Court had ruled in June 2006 on the requests contained in the May 2007 letters, Bender interpreted the Court's grant of leave to file a motion to compel to mean that she could raise these same issues with the Court a second time. This interpretation was incorrect. The Court's grant of leave to Bender to file a motion to compel did not extend to discovery requests upon which the Court had already ruled in June. The Court agrees with Defendants' assertion that

10

Bender's present motion to compel is both untimely and duplicative with regard to all issues except for the identification of newly discovered third-party witnesses. Therefore, Bender's motion to compel responses to discovery requests she made in the May 2007 Letters is **DENIED, in part**, and **GRANTED, in part**.

### C. Specificity of Bender's Requests

Bender's motion fails to specify any particular discovery dispute. As *Bivens* Defendants correctly assert, "[l]ocal rules require that a party raising a discovery dispute identify the discovery requests at issue as well as the purportedly objectionable or insufficient responses, and that the party explain the alleged deficiency in such responses. . . . [and that the party] either quote from or attach the allegedly objectionable responses." (See *Bivens* Defendants' 11/5/07 Letter to Court at 1; Local Civ. R. 5.1; Local Civ. R. 37.1.) Defendants argue that because Bender did not set forth any of Defendants' answers, or specifically identify a discovery dispute, they had a limited opportunity to respond to Bender's motion. (Ariel Del Valle and HWA, Inc. Opposition to Plaintiff's Motion to Compel Discovery at 1; *Bivens* Defendants' 11/5/07 Letter to Court; The City of New York Law Department's 11/29/07 Letter to Court.)

In her Reply to Defendants Ariel Del Valle and HWA, Inc.'s Memorandum in Opposition, Bender more specifically identifies numerous discovery disputes. Given Bender's *pro se* status, the Court evaluates the contentions of Bender's Reply, despite the fact she did not specifically raise them in her initial motion. Of the disputes Bender specifically identifies in her Reply, the Court finds that the only timely dispute is that related to the ongoing recalcitrance of Defendants Del Valle and HWA, Inc. to respond to her requests regarding the identity of two male witnesses visible on the federal videotapes. (Pl. Mot. at 3, 6.)

In her interrogatory to Defendant HWA, Inc., Bender clearly and specifically described the location of the witnesses whose identification she sought, with reference to the federal videotape recording of the SSA office at the time of the incident. (Plaintiff's First Set of Interrogatories and Request for Production of Documents and Things from Defendant HWA, Inc. at 3.) She described the witnesses on the federal videotape as being two persons seated ten feet from her, diagonally behind the desk of Mr. Aybar, and who were present during Bender's entire time within the SSA administrative area, "precisely 11:00:00 a.m. through 11:19:50 a.m." Bender served this interrogatory on November 11, 2006. Bender disputed Del Valle's identification of these witnesses as hearing impaired SSA employees as early as the March 1, 2007, conference with the Court, at which time Del Valle and HWA, Inc.'s counsel, Glenn H. Egor, represented he had provided the information to Bender. At that time, Egor was ordered to produce to the Court documentation of when and how witnesses were disclosed to Bender, yet he failed to do so. Rather, he copied the Court on a letter to Bender in which he provided, without comment, a list of sixteen witnesses, which he indicated were possible "additional" witnesses. (Letter from Glenn H. Egor to Sherry Bender dated March 6, 2007.) He did not indicate which, if any, of the witnesses on his list were the witnesses whose identity Bender had requested in November, 2006. Not only was Egor's disclosure untimely, it was unclear. The Court can only speculate as to what Egor intended when he used the word "additional" to describe his disclosure of witnesses on March 6.

Bender's repeated assertions that the witnesses had been misidentified by Del Valle as three females, instead of the two males visible on the tape, should have been more than sufficient to put Egor on notice that there was a discrepancy between the information he provided and the

identities of the persons Bender sought to be identified. It would seem to have been a simple matter for Egor to view the videotape and respond to Bender's request. If Del Valle did not know the identities of the persons Bender referenced, he could simply have said so. Instead of clarifying the matter, Egor continued to stonewall Bender, and continued to disregard an order of this Court that he provide documentation regarding how he identified and disclosed witnesses to Bender. Even when Bender moved for sanctions against Egor, yet again describing Del Valle's misidentification of the witnesses, Egor dismissed her request by referring Bender to his March 6 disclosure.

**D. Propriety of Sanctions**

The federal videotape has been available to Del Valle since at least March 1, 2007[3], when Bender first raised the misidentification issue with him and the Court. Reasonable steps under the circumstances would have been to review the tape at that time and determine whether or not Del Valle knew the identities of the specific witnesses Bender sought. Instead, counsel for Del Valle continued to rely on their representations to Bender and to this Court that the sought witnesses were three hearing impaired female SSA employees. Del Valle's counsel represented this to Bender in response to her March 1, 2007, request for this information at a Court conference, in response to her March 30, 2007 letter request for this information, in response to her motion for sanctions regarding Egor's failure to comply with the Court order regarding this information, and to this Court during the April 10, 2007 conference. Finally, and most notably, even *after* Del

---

[3]The videotape was apparently available to Del Valle at the same time Bender received a copy. Del Valle does not assert otherwise.

13

Valle changed his testimony regarding these witnesses during his May 3, 2008 deposition[4], counsel for Del Valle again represented to this Court[5] that the witnesses in question had been disclosed as three hearing impaired females in April 2007. (Ariel Del Valle and HWA, Inc. Opposition to Plaintiff's Motion to Compel Discovery at 1.)

It is not unusual for a *pro se* party to complain about the behavior of attorneys during discovery. While the vast majority of counsel before this Court have treated *pro se* litigants with respect, and have made significant efforts to facilitate the exchange of information, there are unfortunately times when counsel have acted in a dismissive or recalcitrant manner. This is not to deny that some individuals without counsel can be challenging; however, it is a disservice to the Court and our system of justice to presume that the unrepresented have meritless claims and are therefore unworthy of the best efforts of counsel.

Glenn H. Egor was put on notice by the Court on April 10, 2007, that he would be sanctioned for his untimely disclosure of witnesses, for making incorrect statements which unnecessarily delayed the case, and for seeking to intimidate Plaintiff. For this behavior Egor **SHALL** pay $1000 in sanctions to the treasury of the Court.

Moreover, Egor was warned by the Court on April 10, 2007, that it would consider additional sanctions if the video revealed that the individuals in question were male. Did Egor view the video in the intervening eighteen months and correct the record? Did counsel who filed

---

[4] During Del Valle's deposition, Bender exhibited the federal videotape to him. Del Valle conceded that Bender was in fact correct that the witnesses were not three female SSA employees, but instead two male youth group volunteers. (Del Valle Deposition, May 3, 2008 at 1:41-1:43.)

[5] Defendants' November 16, 2007 letter response to Bender's motion from counsel Laurine Rubin states that "the attorneys for HWA and Del Valle responded [to Bender's request for the contact information of the two witnesses] listing the hearing impaired witnesses to which plaintiff refers in a letter dated April 6, 2007. There were in fact three hearing impaired witnesses identified in that letter with their complete addresses."

subsequent papers review the video and correct the record? Did Del Valle review the video and inform counsel that an error had been made? The answer to each of these questions appears to be, "No." Not until his deposition on May 3, 2008, did Del Valle admit his mistake.

At this late stage of the litigation, HWA, Inc. has been dismissed. Del Valle stated in his deposition that he does not know the identities of the two male youth group volunteers. (Del Valle Deposition, May 3, 2008 at 1:41-1:43.) If Del Valle had taken Bender's requests and representations regarding the misidentification of these witnesses seriously in March 2007, and responded appropriately to the Court's orders by disclosing his knowledge, or lack thereof, of the identities of these witnesses, Bender would perhaps have been in a position to pursue other avenues of discovery. However, Del Valle's counsel's continued misrepresentations impeded Bender's attempts to obtain relevant discovery, and caused unnecessary delay in this case. Questions yet remain as to how the number and gender of the potential witnesses were incorrectly conveyed by counsel. It is clear, however, that counsel for Del Valle have failed not only in their obligation to Plaintiff but also to the Court. Whether the result of malfeasance or negligence, the prolonged duration of the error warrants sanction by this Court. Therefore, **IT IS HEREBY ORDERED** that Glenn H. Egor and Laurine Rubin, counsel for Del Valle, **SHALL** submit to the Court, by **November 24, 2008**, declarations explaining how, and by whom, the individuals were identified for purposes of responding to Bender's requests and what actions were taken by counsel to identify these persons since the April 10, 2007, conference. In addition, Del Valle **SHALL** submit, by **November 24, 2008**, a declaration by someone with personal knowledge indicating what information Del Valle and HWA, Inc. have pertaining to the identities of the two male youth group volunteers Del Valle identified on the federal videotape

during his deposition. The specific purpose of these declarations is to allow the Court to determine what additional sanctions shall be imposed on Del Valle and his counsel.

## IV. CONCLUSION

The Court ruled in June 2007 that the requests contained in Bender's May 2007 Letters were untimely. With one exception, these requests remain untimely, and Bender's present motion to compel responses to these letters is substantially duplicative of the issues she raised with the Court in May 2007. Given the record before the Court, Bender's motion to compel responses to the May 2007 Letters is **DENIED** with respect to all requests, with the exception that Glenn H. Egor and Laurine Rubin, counsel for Del Valle, **SHALL** submit to the Court, by **November 24, 2008**, declarations explaining how, and by whom, the individuals were identified for purposes of responding to Bender's requests, and what actions were taken by counsel to identify these persons since the April 10, 2007, conference. In addition, Del Valle **SHALL** submit, by **November 24, 2008**, a declaration by someone with personal knowledge indicating what information Del Valle and HWA, Inc. have pertaining to the identities of the two male youth group volunteers Del Valle identified on the federal videotape in his deposition. Moreover, for his untimely disclosure of witnesses and his incorrect statements in relation to this disclosure, Glenn H. Egor, counsel for Ariel Del Valle, **SHALL** pay $1000 in sanctions to the treasury of the Court.

**SO ORDERED this 14th day of November 2008**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**