UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHERRY E. BENDER,

                **Plaintiff,**

                **- against -**

ARIEL DEL VALLE, et al.,

                **Defendants.**

MEMORANDUM OPINION AND ORDER

05 Civ. 6459 (GEL) (RLE)

**RONALD L. ELLIS, United States Magistrate Judge:**

On July 15, 2005, pro se plaintiff Sherry E. Bender filed this civil rights action arising from an altercation with authorities at an office of the Social Security Administration ("SSA"). The Honorable Gerard E. Lynch referred this case to the undersigned for general pretrial supervision on December 23, 2005. (Doc. No. 9.) In its November 14, 2008 Opinion and Order, the Court ordered Glenn H. Egor, counsel for Ariel Del Valle, to pay $1000 in sanctions for his untimely disclosure of witnesses and his incorrect statements in relation thereto.[1] (Doc. No. 107.) On January 30, 2009, District Judge Lynch denied Egor's motion to modify or set aside that Opinion and Order. (Doc. No. 128.) The referral of this case for general pretrial supervision is now closed; the only issue before the Court is whether further sanctions are appropriate. Although the Court is troubled by the course of discovery in this case, no further sanctions shall be imposed.

The altercation giving rise to Bender's suit took place on July 17, 2002, when she appeared at the SSA office located at 650 E. 12th Street in Manhattan, New York. A few days

---

[1] The background is set forth in full in the November 14, 2008 Opinion and Order.

later, Bender filed a Freedom of Information Act ("FOIA") request for the federal surveillance video recordings of the incident. In response, she was sent a videotape of the requested footage through the SSA Office of Disclosure Policy ("SSA ODP") on October 2, 2002. (Bender's Opp'n to Egor's Mot. to Modify or Set Aside the Sanctions Order of Magistrate Ellis, Jan. 20, 2009 ("Bender Opp'n") at 5.) In October 2006, during discovery, the U.S. Attorney's Office provided Bender with four additional videotapes that were allegedly copies of the surveillance video; however, these tapes were different from those Bender received pursuant to her FOIA request insofar as they were in fast speeds and appeared to span the length of several days. (*Id.* at 8.) Bender likewise provided the U.S. Attorney's Office with a copy of the video she had received from the SSA ODP. (Assistant U.S. Attorney Brian M. Feldman's Letter to the Court, Feb. 27, 2009.) On February 5, 2007, the U.S. Attorney's Office provided each co-defendant with a copy of the SSA ODP videotape that Bender had provided to it. (*Id.*; Bender Opp'n at 8-9.)

In her First Set of Interrogatories to Del Valle, served November 11, 2006, Bender sought the identities of two individuals, visible on the SSA ODP videotape, who were seated about ten feet away from Bender during the entire length of the time she was present within the administrative area of the SSA office. (Bender Opp'n at 6.) Bender alleged these individuals did not turn around in the direction of any disturbance during Bender's visit, and this fact supposedly contradicted statements Del Valle had apparently made in an incident report about Bender having been yelling and hysterical. (*Id.* at 6; Egor Decl., Ex. C (Interrogatory Numbers 19 and 19(a)) at 8.) In Interrogatory Number 19, Bender asked Del Valle to explain why these two people did not turn around in the direction of any disturbance if Bender had been acting as Del Valle claimed. (*Id.*) In responses served on December 11, 2006, Del Valle made general objections to

Interrogatory Number 19, but stated that "notwithstanding the objection, the individuals referred to by the Plaintiff are hearing impaired." (*Id.* at 7.) Del Valle later identified the witnesses as "three (3) hearing impaired witnesses who are employees of the SSA," and provided Bender with the names of three females – Donna Barrimond, Gloria Adams, and Patty Suhell. (Letter from Egor to Bender, April 6, 2007, at 1-2.) It was not until his deposition in May 2007 that Del Valle indicated, upon repeated questioning by Bender and while viewing the SSA ODP tape, that the witnesses were in fact two males who worked in an SSA summer youth program. (Bender Opp'n at 8-9; Del Valle Decl. ¶ 9.) Prior to Del Valle's deposition, the identification of these witnesses was the subject of two orders by this Court and a motion by Bender for sanctions, culminating in the Court's November 14, 2008 Opinion and Order sanctioning Del Valle's counsel for his untimely disclosure of witnesses and the incorrect statements he made in relation to that disclosure.

For the purpose of determining whether additional sanctions would be imposed, the Court ordered Egor and Laurine Rubin[2] to submit declarations explaining how, and by whom, certain individuals were identified for purpose of responding to Bender's discovery requests, and what actions were taken by counsel to identify these persons since an April 10, 2007, Court conference. Del Valle was ordered to submit a declaration by someone with personal knowledge indicating what information he and HWA, Inc. have pertaining to the identities of the two male youth group volunteers that Del Valle identified on the SSA ODP surveillance videotape during his deposition.

On November 24, 2008, Egor, Del Valle, and Rubin filed declarations in accordance with

---

[2]Rubin assumed handling of this case in August 2007. (Decl. of Laurine M. Rubin ¶ 2; Doc. No. 110.)

3

this Court's order. (Doc. Nos. 108, 109, and 110.) In his declaration, Egor explains that, based upon Del Valle's statements to him and his own viewing of the surveillance videotape, he had no reason to believe that his client's identification of witnesses was inaccurate. (Egor Decl. ¶ 8.) He explains that in November, 2007, he viewed, with Del Valle, a videotape provided by the U.S. Attorney that was on stop-motion delay, and that this was the only version he had seen prior to the deposition of Del Valle on May 3, 2007. (Egor Decl. ¶ 4.) He identified this video as that which was submitted as Exhibit 1 to Del Valle's Declaration. (Egor Decl. ¶6.) Egor states that he attempted to obtain a copy of Bender's videotape through a discovery request made to her on February 16, 2007, but that she never provided a copy of that tape; and that in March, 2007, the Court denied his request for Bender's copy of the video because she had provided a copy to the U.S. Attorney in this case. (Egor Decl. ¶ 5.) He further notes that at no time did the U.S. Attorney advise him that his version of the video was different from Bender's video. (*Id.*) Egor states that Del Valle explained in his deposition that the reason he had misidentified the witnesses was because, prior to his deposition, he had only viewed a very blurry, poor quality video of the incident. (Egor Decl. ¶ 12.) Egor states that Del Valle was able, during his deposition, to view Bender's copy of the surveillance videotape for the first time – and that this version was in real time and high resolution. (Egor Decl. ¶ 9.) Del Valle likewise attests that, prior to his deposition, the only tape available for him to view was the one he attached to his Declaration as Exhibit 1, which is "not in real-time, very blurry and difficult to view." (Del Valle Decl. ¶8.) He further notes that, at his deposition, he was "shown a real-time video." (*Id.* ¶9.)

     The U.S. Attorney's Office provided the Court with a copy of the SSA ODP tape that Bender had provided to that office. In the cover letter accompanying this tape, the Assistant U.S.

Attorney noted that by letter dated February 5, 2007, his office provided a copy of this same videotape to each of the co-defendants in this matter. (Assistant U.S. Attorney Brian M. Feldman's Letter to the Court, Feb. 27, 2009.) The Court has viewed all versions of the surveillance videotape that are part of the record in this case, including: the tape Bender produced to the U.S. Attorney in discovery, the four tapes the U.S. Attorney produced in discovery, and the tape Del Valle attached to his declaration as "Exhibit 1." The Court notes that the copy of the tape that the U.S. Attorney's Office submitted to the Court (which was the same tape Bender produced to the U.S. Attorney in discovery) contains video footage that is indistinguishable from that contained in the videotape attached as Exhibit 1 to Del Valle's declaration. Egor and Del Valle's assertions that the videotape they viewed prior to Del Valle's deposition was qualitatively different from the videotape Bender displayed during Del Valle's deposition are belied by the fact that both tapes are in fact the same SSA ODP tape provided to Bender pursuant to her FOIA request.

    As District Judge Lynch noted, the images on the tape are not easy to identify. This fact alone, however, does not excuse Egor's actions in this case. First, Egor attests that "a videotape provided by the U.S. Attorney . . . that was on a stop motion delay" was "the only version [he] had seen prior to the deposition of Ariel Del Valle on May 3, 2007"; yet Assistant U.S. Attorney Feldman notes that a copy of Bender's tape (which is not on stop motion delay, and is the same tape Bender displayed to Del Valle in his deposition) was sent to each co-defendant by letter dated February 5, 2007. Again, a comparison of the tape Del Valle asserts as being "blurry" and of "poor quality" against the tape he asserts is "real-time" and "high-resolution" reveals that the tapes are indistinguishable from each other.

5

Second, if Del Valle were unable to confirm or deny Bender's assertion, the appropriate response would have been to acknowledge that fact. Instead, Del Valle and Egor persisted in claiming that the individuals on the tape were "three hearing impaired women." (Del Valle Decl. ¶4.) It is clear that neither Egor nor Del Valle credited Bender's claim that the tape depicted two males. (November 14, 2008 Order at 6-7.) Despite Bender's repeated indications that witnesses had been misidentified, Egor undertook no further inquiry to ensure that his certifications to Bender and to this Court were correct.

While the Court would not generally require an attorney to do more than ask his client to make an identification, the quality of the tape actually changes the calculus. Were the tape clear, it would be reasonable to rely on the client's identification. Here, however, Bender continued to raise questions about the identities of the persons on the tape. In addition, the Court specifically cautioned counsel to verify the discovery provided to Bender. Instead of continually certifying, as an officer of the court, that his client's identification of the witnesses in question was correct, Egor should have either explained to the Court (1) that his client was uncertain because of the poor quality of the surveillance tape, or (2) what steps he had taken to explore how his client was able to be certain. The poor quality of all of the tapes, however, leads the Court to conclude that no further sanctions of Egor are warranted.

While the Court is troubled that Rubin maintained Del Valle's initial position regarding his identification of witnesses in this matter even after Del Valle admitted during his deposition that he had made a mistake, she did not begin handling this case until after the events giving rise to the Court's sanction of Egor, and after Del Valle's deposition. In addition, it appears she relied in large part on Egor's previous assertions. No sanction will be imposed for her conduct in this

6

case.

For the foregoing reasons, the sanctions previously imposed will remain, but no further sanctions shall be imposed.

**SO ORDERED this 23rd day of June 2009**
**New York, New York**

The Honorable Ronald L. Ellis
United States Magistrate Judge